AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | |
| v. | |
| JAMER MAURICIO SEPULVEDA SALAZAR and JESUS EDUARDO PADRON ROJAS | Case No.    2:24-MJ-04834-DUTY |
| Defendants | |

**LODGED**
CLERK, U.S. DISTRICT COURT
8/13/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ MMC ___ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
08/13/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ KL ___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 7, 2024, in the county of Los Angeles in the Central District of California, the

defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951(a), 924(c) | Conspiracy to Interfere and Interference with Commerce by Robbery; Possess, Use, Carry, and Brandish a Firearm in Furtherance of, and During and in Relation to, a Crime of Violence |

This criminal complaint is based on these facts:

 *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/*
*Complainant's signature*

Thomas Ferguson, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    August 13, 2024

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Jena MacCabe x5046

## AFFIDAVIT

I, Thomas Ferguson, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrants for JAMER MAURICIO SEPULVEDA SALAZAR ("SEPULVEDA") for violating 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C. § 924(c) (Possess, Use, Carry, and Brandish a Firearm in Furtherance of, and During and in Relation to, a Crime of Violence) and for JESUS EDUARDO PADRON ROJAS ("PADRON") for violating 18 U.S.C. § 1951(a) (Conspiracy to Interfere with Commerce by Robbery).

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3.   I am a Deportation Officer with the United States Department of Homeland Security, Immigration and Customs Enforcement, Enforcement and Removal Operations in Camarillo, California, and have been so employed since May 2018.  I am

currently assigned to Homeland Security Investigations ("HSI") Office of the Assistant Special Agent in Charge, Ventura Interior Enforcement Group, as a Task Force Officer.  Prior to my current position, I was employed as a Customs and Border Protection Officer with United States Customs and Border Protection ("CBP") beginning in April 2015 until May 2018. While employed with CBP, I was assigned to San Francisco International Airport from April 2015 until January 2016, then the San Ysidro Port of Entry from January 2016 until May 2018. During this time, I examined thousands of identification documents such as passports, visas, border crossing cards, driver's licenses, birth certificates, and foreign identity cards.  I have attended the CBP Officer Basic Academy and Immigration Enforcement Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received over 40 hours of classroom instruction, practical training, and testing, relating to the identification of false documents and imposters using genuine documents not lawfully issued to them. I have received extensive training in immigration and customs law and have participated in investigations involving these violations.  I have received additional training in the areas of arrest procedures, execution of searches and seizures, and various other criminal laws and procedures.

4.   During my time assigned to this office and prior offices, I have investigated and assisted other agents in a wide range of criminal investigations, including, but not limited to, transnational criminal organizations, immigration violations,

2

counterfeit documents, identity theft, human smuggling and trafficking, drug trafficking, robberies, and counterfeit goods. These investigations have involved investigative interviews, physical surveillance, the review of immigration records, the execution of search warrants for cars and residences, and the review of evidence from digital devices.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

5.    The Beverly Hills Police Department ("BHPD") and HSI have been investigating an armed robbery, in violation of 18 U.S.C. §§ 1951(a) and 924(c), that took place on August 7, 2024 (the "**SUBJECT ROBBERY**").  The robbers held the victim at gunpoint at a hotel in Beverly Hills and stole a Patek Philippe Nautilus 5711/113p-001 Emerald Nautilus wristwatch valued at approximately $1,000,000 from the victim.

6.    As explained below, there is probable cause to believe that SEPULVEDA, a citizen and national of Colombia, and PADRON, a citizen and national of Venezuela, are members of the robbery crew, including based on the following evidence: CCTV footage surrounding the **SUBJECT ROBBERY** showing SEPULVEDA as the getaway driver, <u>Mirandized</u> statements made by SEPULVEDA and PADRON about their involvement in this robbery conspiracy, photographs of the stolen jewelry present on SEPULVEDA's and PADRON's phones, SEPULVEDA wearing the same shirt when arrested that he wore in the **SUBJECT ROBBERY,** and the seizure of a firearm that PADRON was seen holding on CCTV footage at the Airbnb where the robbers were staying before and after the **SUBJECT ROBBERY.**

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

**A.    Background of South American Theft Groups**

7.    Based on my training and experience and conversations with other law enforcement officers, I know that South American Theft Groups ("SATG"), a designated transnational criminal organization, is comprised of citizens from countries such as Chile, Colombia, Peru, and Venezuela.  These groups commonly exploit the U.S. immigration system and make fraudulent claims to enter the United States.  Another term used to describe this is "Crime Tourism."  Members of SATG crews live nomadic lives to avoid arrest by law enforcement, including by residing in Airbnbs and cash-focused motels.  SATG are known to use counterfeit identification documents and aliases to disguise their identity and criminal history during encounters with law enforcement.

**B.    Armed Robbery at the Beverly Wilshire Hotel**

8.    Based on my communications with BHPD Detectives, as well as my review of evidence from BHPD in this investigation, I know the following.

9.    At approximately 6:39 p.m., on August 7, 2024, victim T.A. was sitting in the patio area of "The Blvd" restaurant located at the Beverly Wilshire Hotel, 9500 Wilshire Boulevard, Beverly Hills, California, with his wife and five-year-old twin daughters.  T.A. was sitting at the last table on the far west side of the patio.  T.A. was sitting with his back towards the hotel, facing Via Rodeo Drive (looking northbound).

10.  According to T.A., he noticed a man (identified as Suspect 2) approach his left side in his peripheral field of view.  A male Hispanic adult (identified as Suspect 1) approached T.A. as he sat at the table.  Suspect 1 walked towards T.A. from the sidewalk to the patio area.  As Suspect 1 approached T.A., Suspect 1 pointed a black semi-automatic handgun directly at T.A.  Suspect 1 was holding the handgun in his right hand, pulled the slide of the handgun to the rear, released the slide, and appeared to chamber a round.  Suspect 1 began yelling in what T.A. believed to be Spanish.

11.  As Suspect 1 was pointing the handgun at T.A., Suspect 2 approached him on his left side in the patio.  Suspect 2 removed T.A.'s "Patek Philippe" silver wristwatch from T.A.'s left wrist.  As T.A. explained, fearing for his and his family's lives, T.A. let Suspect 2 take the watch without a struggle.

12.  After Suspect 2 removed the watch from T.A.'s left wrist, both suspects ran west toward South Rodeo Drive.  The suspects ran southbound on Rodeo Drive and out of view.

13.  T.A. described Suspect 1 as a male Hispanic adult with short dark hair, with unshaven facial hair, and wearing black sunglasses, a dark-colored zip-up jacket, and black jeans.  T.A. described Suspect 2 as a male Hispanic adult wearing sunglasses and a hat.

14.  T.A. said the theft occurred within seconds.  T.A. said the value of his watch was $1 million.  T.A. was unable to provide the serial number of his watch immediately after the **SUBJECT ROBBERY**.  T.A. described the watch as silver in color

5

with a green faceplate and green accents.  T.A. also said that the clasp for his watch was broken prior to the **SUBJECT ROBBERY**.

15.  After the **SUBJECT ROBBERY,** BHPD reviewed footage from CCTV cameras in the area of Wilshire Boulevard and Rodeo Drive. While reviewing the footage, BHPD found that some that captured footage of the **SUBJECT ROBBERY** at 6:39 p.m.  The footage showed the following:

a.  Suspect 1 and Suspect 2 approached the west patio area of the restaurant.  Suspect 1 faced south toward the patio and entered from the south Wilshire Boulevard sidewalk, east of South Rodeo Drive.  Suspect 2 entered the restaurant patio from the west side of South Rodeo Drive.

b.  Both suspects converged without hesitation on the table where T.A. and his family were dining.  Suspect 1 and Suspect 2 appeared to point a handgun at T.A. as they entered the patio.  While Suspect 1 was facing T.A. and pointing his gun at him, Suspect 2 approached T.A.'s left side.  Below is a still image from CCTV footage where the SUBJECT ROBBERY occurred:



c.    After approximately two seconds the suspects fled from the west side of the patio.  The suspects ran to South Rodeo Drive, south of Wilshire Boulevard.  The suspects then entered a parked blue Toyota Corolla, which was cold-plated.[1] The vehicle was parked along the west curb of South Rodeo Drive, south of Wilshire Boulevard, facing south with its hazard lights on.  Suspect 1 entered the front passenger side of the vehicle while Suspect 2 entered the rear passenger side of the vehicle. Below is a photograph of the blue Toyota Corolla approximately an hour before the robbery:



d.    The vehicle fled south on South Rodeo Drive towards Charleville Boulevard.  The vehicle eventually headed west on Olympic Boulevard, from South Rodeo Drive, until it left Beverly Hills.

---

[1] Based on my training and experience, I know that "cold-plating" means using a license plate on a vehicle that is not registered to that vehicle, most commonly stolen from another vehicle, to conceal crimes and avoid law enforcement detection.

16.   Because the suspects entered the passenger side of the vehicle and it fled immediately, investigators determined that a third suspect was driving the vehicle.  Upon further review of the CCTV footage, SEPULVEDA could be seen driving the getaway vehicle wearing a white "Guess" shirt.

17.   T.A. and his family are citizens and nationals of the United Kingdom and reside in the United Arab Emirates.  They were staying at the Beverly Wilshire Hotel at the time of the **SUBJECT ROBBERY.**

### C.   SEPULVEDA and PADRON Were Driving Towards the California State Line in a Chevrolet Equinox Linked to Watch Robberies in Beverly Hills

18.   Based on my communications with BHPD Detectives, as well as my review of evidence from BHPD in this investigation, I know the following.

19.   On August 10, 2024, at 9:20 p.m., BHPD communicated with the Blythe Police Department regarding a Chevrolet Equinox, bearing Florida paper license plate "DQY7857," which was reported to be eastbound on the I-10 Freeway at 7th Street.  The Blythe Police Department conducted a vehicle stop and detained all occupants without incident.  The Blythe Police Department recovered two phones from the center console of the vehicle; one appeared to belong to the female occupant, and the other appeared to belong to SEPULVEDA, who was the driver.  Another phone was recovered from PADRON.  The vehicle and its occupants were then transported to Blythe Police Department.  SEPULVEDA was found to be wearing the same white "Guess" shirt from CCTV footage of him driving the getaway car for the **SUBJECT ROBBERY.**

20.   The Equinox, identified by its Florida paper license plate "DQY7857," was directly linked to this SATG crew's armed robberies in Beverly Hills.  Specifically, on August 5, 2024 -- two days before the **SUBJECT ROBBERY** -- this Equinox was captured on CCTV footage near the scene of another armed robbery where a victim was threatened with a firearm and the robbers stole a $30,000 Rolex watch from him.  As discussed further below, the same SATG crew that committed this armed robbery committed the **SUBJECT ROBBERY**.

21.   According to CCTV footage, the Equinox's cold-plated California license plate was changed to the temporary Florida paper license plate shortly after the crime, a behavior consistent with tactics used by organized robbery crews, like SATG crews.  Additionally, automatic license plate reader hits showed the Equinox in areas near the scenes of these armed robberies, including at an Airbnb located on Browning Boulevard in Los Angeles, California, a location associated with the suspects, as discussed further below.  Based on my training and experience, I know that the Equinox exhibited patterns typical of coordinated criminal activity, including working in tandem with another suspect vehicle, a white Honda Civic.

D.   **SEPULVEDA and PADRON's <u>Mirandized</u> Statements**

22.   Based on my communications with BHPD Detectives, as well as my review of evidence from BHPD in this investigation, I know the following.

23.   BHPD interviewed SEPULVEDA and PADRON.  All interviews were conducted in Spanish and were audio and video recorded.

SEPULVEDA and PADRON were Mirandized, and both waived their rights.  Below are summaries of their statements.

      a.   On August 11, 2024, PADRON said that he has done significant traveling with SEPULVEDA including from Dallas, Texas to Los Angeles, California.  PADRON admitted to being in the Chevrolet Equinox when it was used in the armed robbery of the $30,000 Rolex watch in Beverly Hills, as discussed above. PADRON said that he was in the backseat during this armed robbery.  PADRON also admitted to staying in an Airbnb bedroom with a Glock firearm.[2]  PADRON also admitted seeing the firearm and handling it.  On August 12, 2024, PADRON admitted to carrying the firearm out of the Airbnb on August 9, 2024, before returning inside and leaving the weapon inside the Airbnb.  A

TCF    still image from the Airbnb's CCTV footage showing ~~PAVON~~ PADRON with what appears to be the firearm is below:

---

[2] BHPD's search of the Airbnb, which is located on Browning Boulevard in Los Angeles, California, pursuant to a state search warrant, is discussed in more detail below, including the seizure of this firearm.



b.   On August 11, 2024, SEPULVEDA admitted to being the driver of the blue Toyota Corolla used as the getaway car for, and being a lookout during, the **SUBJECT ROBBERY.**  SEPULVEDA was able to describe the stolen Patek Phillipe watch from memory.  SEPULVEDA said that the crew had been doing surveillance and watching for the Patek Phillipe watch for two weeks.  SEPULVEDA admitted to committing a similar robbery of another victim on August 5, 2024, and stealing a $30,000 Rolex, as discussed above.[3]  SEPULVEDA said that he received $1,500 from a co-conspirator for the Rolex.  SEPULVEDA admitted to living at the Airbnb on Browning Boulevard and seeing several firearms at the Airbnb.  SEPULVEDA said that the co-conspirator who paid him for the Rolex had SEPULVEDA drive him from New York to Texas to avoid robbery investigations of him in New York.  SEPULVEDA said that when their vehicle was stopped in Blythe, California, as discussed above, they were on their way to Miami to meet that co-conspirator and retrieve their cut of the stolen Patek Phillipe.

**E.    Evidence Obtained from Digital Devices**

24.   Based on my communications with BHPD Detectives, as well as my review of evidence from BHPD in this investigation, I know the following.

---

[3] This armed robbery, which BHPD has corroborated by independent investigative steps, occurred during the two weeks that the crew was hunting the Patek Phillipe watch stolen during the **SUBJECT ROBBERY.**  According to SEPULVEDA, it was a crime of opportunity while they were scouting the area to steal the Patek Phillipe watch.

25.   SEPULVEDA and PADRON both consented to BHPD accessing their phones, including by providing their passcodes.

26.   SEPULVEDA's phone contained several photographs of different firearms, including SEPULVEDA holding the weapons. SEPULVEDA's phone also contained videos and photographs of SEPULVEDA holding the stolen Patek Phillipe watch after the **SUBJECT ROBBERY**.  Also found on the phone were screenshots of the BHPD press release regarding the **SUBJECT ROBBERY**, the screenshot was time stamped at 10:20 p.m. on August 9, 2024, which was the night that SEPULVEDA, PADRON, and their female passenger left the Airbnb.

27.   PADRON's phone also included several photographs of PADRON holding firearms, including the Glock firearm seized from the Airbnb, as discussed further below.  Also found were several photographs of the stolen Patek Phillipe watch on a person's wrist and a screen shot of an Instagram story under "close friends" that depicts a photograph of the Patek Phillipe watch that was stolen during the **SUBJECT ROBBERY** and the following text: "these are the 2 watches we are looking for, they are valued at 1.3 million dollars."

**F.    Search of the Robbery Crew's Airbnb**

28.   On August 10, 2024, at approximately 7:00 a.m. -- after obtaining a state search warrant -- BHPD, along with the assistance of Santa Monica Police Department Officers, executed the warrant at an Airbnb on Browning Boulevard in Los Angeles, California.  According to CCTV footage from the Airbnb, the robbers had left the Airbnb the night before the search.

13

29.   While searching a bed in the bedroom that the female passenger with SEPULVEDA and PADRON (discussed above) later claimed that PADRON slept in, BHPD located a silver/gray/black Glock 21 .45 caliber handgun, bearing serial number HAZ636,[4] loaded with a magazine, underneath a pillow, inside the pillowcase.  BHPD noted that the magazine contained ammunition.

30.   According to a BHPD Detective, BHPD also found clothing that appeared to match that worn by the robbers.

**G.   The SUBJECT ROBBERY Affected Interstate Commerce[5]**

31.   Based on my training and experience, conversations with other law enforcement officers, and personal familiarity with this investigation, I am aware of the following.

32.   Law enforcement responded to the scene of the **SUBJECT ROBBERY** on August 7, 2024.  The Beverly Wilshire Hotel and the

---

[4] This handgun was registered to former Los Angeles Police Department Officer Christopher Dorner.

[5] "To establish the interstate commerce element of a Hobbs Act charge, the government need only establish that a defendant's acts had a de minimis effect on interstate commerce.." United States v. Lynch, 437 F.3d 902, 908-09 (9th Cir. 2006) (en banc) (citations omitted), overruled on other grounds by United States v. Lucas, 101 F.4th 1158, 1159 (9th Cir. 2024) (en banc).  The interruption of a business engaged in interstate commerce is sufficient.  United States v. Fierro, 450 F. App'x 586, 588 (9th Cir. 2011) (finding police investigation following robbery of the business, and the resulting interruption in the business, was sufficient to prove interstate commerce); United States v. Boyd, 480 F.3d 1178, 1179 (9th Cir. 2007) (affirming a Hobbs Act conviction premised on a robbery that forced the temporary closure of a business engaging in interstate transfers of money).  Robbery of a single individual for a very large sum can directly affect interstate commerce. See United States v. Wang, 222 F.3d 234, 239 (6th Cir. 2000) ("The federal courts have acknowledged, for example, that victimization of a large number of individuals, or victimization of a single individual for a very large sum, can have the potential directly to affect interstate commerce.") (citation omitted).

attached restaurant "The Blvd," where the **SUBJECT ROBBERY**
occurred, are located within a high-traffic area of Beverly
Hills that is predominated by commercial businesses.  As a
result of the significant law enforcement presence and
investigation following the robbery, "The Blvd" was forced to
temporarily stop service and to nullify the charges for patrons
who fled for safety during the **SUBJECT ROBBERY**.  Below are
photographs of some of those receipts.  Additionally, the
Beverly Wilshire Hotel has since been forced to adjust its
security posture.



33.  Based on my conversations with other law enforcement
officers, I understand that T.A. filed an insurance claim for
the full value of the Patek Philippe Nautilus 5711/113p-001

Emerald Nautilus that was stolen during the **SUBJECT ROBBERY,** against the Beverly Wilshire hotel.

## V.  CONCLUSION

34.  For all the reasons described above, there is probable cause to believe that SEPULVEDA has violated 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C. § 924(c) (Possess, Use, Carry, and Brandish a Firearm in Furtherance of, and During and in Relation to, a Crime of Violence) and that PADRON has violation 18 U.S.C. § 1951(a) (Conspiracy to Interfere with Commerce by Robbery) as described above for the **SUBJECT ROBBERY.**

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of August, 2024.

UNITED STATES MAGISTRATE JUDGE